ELISHA I. SMITH, petitioner-appellant,

*v.*

CLARA SMITH, defendant-respondent.

[Decided March 3d, 1924.]

A desertion by a wife from her husband must be willful, continued and obstinate; but where a wife leaves her husband and goes to live with another man, this circumstance is sufficient to furnish a reasonable ground for belief in the mind of the husband that his wife is unchaste, and that, being so, he is relieved from making any effort to induce her to return to him.

On appeal from a decree advised by Vice-Chancellor Ingersoll, dismissing petitioner's petition for divorce.

*Messrs. Babcock & Champion,* for the appellant.

The opinion of the court was delivered by

KALISCH, J.

The petitioner-appellant filed a petition for divorce against his wife in the court of chancery, alleging that she deserted him in the month of October, 1915, "ever since which time and for more than two years last past she has willfully, continuedly and obstinately deserted him." The wife put in no appearance to the suit. The case was referred to a special master, who, after having taken the testimony, made a report refusing to recommend a decree in favor of the petitioner, upon the ground that there was an absence of proof that the wife's desertion was obstinate, in that it was not made to appear that the husband made reasonable advances to his wife, after her desertion, to return to him. Exceptions were taken by appellant's counsel to the master's report and a hearing upon the exceptions was brought on in the court below before

42

Vice-Chancellor Ingersoll, who overruled the exceptions and advised a decree dismissing the petition.

The action of the vice-chancellor was rested upon the ground that the well-settled legal rule, in this state, where a suit for divorce is brought by a husband against his wife for desertion, required the husband to make reasonable efforts to induce her to return to him, and if he fails to make reasonable overtures to that end the requisite statutory element of obstinate desertion is not established. This is undoubtedly the general legal rule; but, nevertheless, in its application it is not unbending and, like every other general rule, is subject to exceptions, and, therefore, it is quite obvious that the applicability of the rule, in its full rigidity, must depend upon and be governed by the circumstances of each individual case. *Hall* v. *Hall, 60 N. J. Eq. 469,* where Gummere, chief-justice, speaking for this court, points out exceptions to the rule, and where the earlier cases relating to the subject are collated.

The fundamental basis of the rule, as illustrated by the decisions, is a public policy to safeguard the sundering of the marital contract against collusion between the parties, either by express consent or implied acquiescence. The rule obviously relates to the character of the proof required to establish obstinate desertion in order to negative any inference that the desertion or its persistent continuance for the statutory period of two years was the result of consent or acquiescence of the parties. But, however that may be, it is plain that the rule was not designed to extend to a case where the conduct of the wife was such as to make it clear that any reasonable effort on the part of the husband to induce his wife to return would prove unavailing or where her conduct was *contra bonos mores.*

Turning to the decisions of the courts of this state. we find in *Hall* v. *Hall, 53 Atl. Rep. 455,* Pitney, vice-chancellor, in dealing with a situation similar to the one here presented (at *p. 459),* declaring, as follows: "In my opinion a woman who deserts her husband, whether as the result of a sudden freak

or deliberately, must, in order to entitle herself to the benefit of the rule that the husband must seek his wife and endeavor to induce here to return, be careful to comport herself during her separation in such a manner as not to give her husband just cause to suspect her chastity." This declaration received the approval of this court on appeal. *Hall* v. *Hall, 65 N. J. Eq. 710.*

In *Sterling* v. *Sterling, 63 Atl. Rep. 548,* a case where a wife deserted her husband and told him that she had deserted him for another man, Magie, chancellor, in discussing the rule requiring the husband to make a reasonable effort to induce his wife to return to him (at *p. 549*), said: "Under such circumstances a demand would seem to be absurd and unlikely to be effective."

Other cases dealing with the subject are: *Lister* v. *Lister, 65 N. J. Eq. 110; affirmed, 66 N. J. Eq. 434; Rogers* v. *Rogers, 81 N. J. Eq. 479* (at *p. 485*); *Fisler* v. *Fisler, 85 N. J. Eq.* (at *p. 199*); *Marsh* v. *Marsh, 86 N. J. Eq. 419* (at *p. 422*); *Hyer* v. *Hyer, 91 N. J. Eq. 148; Danielly* v. *Danielly, 93 N. J. Eq. 558, 559.*

This brings us to the consideration of the question whether in the circumstances established by the proof in the cause the petitioner was relieved from making any effort to induce his wife, after her desertion, to return to him.

The testimony tends to establish that the defendant deserted the petitioner in the month of October, 1915, without any cause or provocation on his part; that she went to live with one Mike McCullough; that the petitioner learned that she went with McCullough to Philadelphia; that he saw them in Atlantic City, walking together "with locked arms going up the street;" that he knew that his wife and McCullough were living together, because he knew where they lived and saw them go in and out of the house; that he got his information that they were living together from Mrs. Doughty; that he never requested his wife to return to him. This is substantially what the husband testified to on this branch of the case.

Mrs. Doughty, a witness sworn on behalf of the petitioner, testified, in substance, that she was an intimate friend of petitioner's wife, having known her from her girlhood, and that she told the witness a week before she left the petitioner that she intended leaving him and was going away with McCullough, because she liked him, and that she did go away with him; that she was satisfied with him and that she would never return to the petitioner; that she, the witness, knew that the petitioner's wife was living with McCullough as his wife at No. 405 North Massachusetts avenue and addressed letters to her in the name of Mrs. McCullough; that she communicated these facts to the petitioner.

In the light of this testimony, which revealed the relations existing between the petitioner's wife and McCullough, though such testimony might have been inadequate to establish adulterous intercourse between them, as a ground for divorce for adultery, nevertheless, the circumstance was sufficient to furnish a reasonable ground for belief in the mind of the husband that his wife was unchaste, and that being so he was relieved from making any effort to induce her to return to him. The spirit of the law is not so unreasonable and cruel as to compel a husband to forfeit all his self-respect and to debase himself by requiring him to make overtures to a wife for her return to his hearth in a case where she has deserted him for another man.

The decree dismissing the petition is reversed, with the direction to the court of chancery to decree a divorce in favor of the petitioner and against the defendant, upon the ground of desertion, according to the settled practice of that court.

*For affirmance*—TRENCHARD, PARKER—2.

*For reversal*—THE CHIEF-JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, GARDNER, VAN BUSKIRK—8.